**Chip BARTON, Plaintiff,**

v.

**SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, Jerry Ferguson, Robert Waters, Ken Phillips, Karen Partain, Lou Delaware, and John Does 1–10, Defendants.**

**No. CIV. A. 399CV722BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 18, 2001.

Jeffrey L. Ellis, Kitchens & Ellis, Kathryn N. Nester, Kathryn N. Nester, Attorney, Jackson, MS, for Chip Barton, plaintiffs.

Paul O. Miller, III, Phelps Dunbar, Jackson, MS, for Southern Farm Bureau Life Insurance Company, Jerry Ferguson, Robert Waters, Ken Phillips, Karen Prestage, Karen Partain, Lou Delaware, John Does, defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause of before the Court on the Motion of the Plaintiff to Remand the case to state court. The Court has considered the Motion, Response of the Defendants, Rebuttal, permissible attachments to each, and supporting and opposing authority and finds that the Motion is well taken and should be granted.

### I. Factual Background and Procedural History

The Plaintiff, Chip Barton ("Barton"), was employed by the Defendant Southern Farm Bureau Insurance Company ("Southern Farm") from July 24, 1967, through June 3, 1998. During the time period relevant to this dispute, Barton initially held the office of Vice President of New Business Administration. On or about February 25, 1998, Southern Farm offered an early retirement package, referred to as the "Special Early Retirement Program" ("Retirement Program"), to all eligible employees. *See* Response of the Defendants, Exhibit G (Memorandum regarding Retirement Program). To avail themselves to the benefits of the Retirement Program, eligible employees had to make an election, in writing, between April 1, 1998, and May 31, 1998. *See Id.*, Exhibit E (Approved Amendment to the Southern Farm Bureau Life Insurance Company Retirement and Trust, "Election Clause"). Barton, because he was an officer of Southern Farm, was excluded from eligibility under the express terms of the

Retirement Program. *See Id.*, at "Eligibility Clause."

On or about May 29, 1998, Barton was informed by Defendant Jerry Ferguson ("Ferguson"), a senior vice president at Southern Farm, that he was "relieved of his job duties and that he was to relocate to another office and perform special projects to be assigned by the senior vice president." *See* Complaint, ¶ 14. Barton's reassignment was attributed to allegations of sexual harassment that had been made against him by other agents/employees of Southern Farm. *Id.*, at ¶ 15. Barton asserts that after he was "demote," he verbally accepted the offer of the "early retirement package" on May 29, 1998, and again on May 31, 1998. *See Id.*, at ¶¶ 18 and 19. Barton was informed that he was not eligible for the Retirement Program as he was still an officer at Southern Farm. Barton was subsequently terminated from his employment at Southern Farm on June 3, 1998. *Id.*, at ¶ 20.

In May of 1999, Barton filed a Complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi. In his Complaint, Barton asserts various state law claims including, but not limited to, breach of employment contract, breach of oral contract, breach of duty of good faith and fair dealing, slander, misrepresentation, intentional and/or negligent infliction of emotional distress, tortious interference with a business relationship, and wrongful termination. The portion of the Complaint relevant for analysis by the Court on the Motion to Remand is as follows:

33. Chip Barton's acceptance of [the offer by Southern Farm] of early retirement after his demotion from corporate officer created an enforceable contract. [The refusal by Southern Farm] to award Chip Barton the early retirement package offered to and accepted by Chip

Barton constituted a breach of said contract on the part of Farm Bureau.

34. Defendants Jerry Ferguson and Robert Waters tortiously interfered with Chip Barton's contract with [Southern Farm] to accept an early retirement package, thereby proximately causing [sic] preventing Chip Barton from reaping the benefits of said contract.

35. As a direct and proximate cause of the above-mentioned acts of Defendants, Chip Barton suffered damages including but not limited to:

. . . .

b. Lost benefits available pursuant to the early retirement package;

c. Loss of retirement benefits, insurance benefits, profit-sharing benefits . . .

*See Id.*, at ¶¶ 33—35. On October 14, 1999, the Defendants timely removed the case from state court on the ground of federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Defendants, in their Notice of Removal, allege that as Barton is claiming benefits under the Retirement Program, which is an "employee pension benefit program," this Court has original jurisdiction over the Plaintiff's claims under 29 U.S.C. § 1132.[1] *See* Response of the Defendants, Exhibit B (Notice of Removal, ¶ 2). On November 16, 2000, Barton filed the subject Motion to Remand. The issue presently before the Court is whether any of the state law claims set forth in the Complaint invoke the federal subject matter jurisdiction of this Court.

## II. Standard

With regard to a Motion to Remand, the party that removed the action to federal court has the burden of establishing a basis for federal subject matter jurisdiction. *See DeAguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir.1995), *cert. denied,* 516 U.S. 865, 116 S.Ct. 180, 133

---

1. Pursuant to 29 U.S.C. § 1132(a)(1)(B):
   A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

L.Ed.2d 119 (1995). The issue of whether federal jurisdiction exists for a removed action is determined by assessing the complaint at the time the Notice of Removal was filed. *See Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir.1990). As a general rule, federal question jurisdiction pursuant to 28 U.S.C. § 1331 only exists when the plaintiff's well-pleaded complaint raises an issue of federal law. *See infra,* at 985.

### III. Analysis

In their Notice of Removal, the Defendants assert that this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. For a federal district court to have subject matter jurisdiction under this statute, the plaintiff's complaint must set forth a claim "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (1994). Under the "well pleaded complaint rule," a federal question must appear on the face of the plaintiff's state court complaint before a federal district court may exercise removal jurisdiction. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). To determine whether an action presents a federal question for removal purposes, a court must examine the allegations set forth in the plaintiff's well-pleaded complaint. *See Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 366 (5th Cir.1995). An examination of the subject state court Complaint does not reveal any federal question upon which this Court can exercise removal jurisdiction as Barton has only pleaded state law claims ranging from slander and intentional/negligent infliction of emotional distress to breaches of contract and good faith and fair dealing.

The Defendants, however, argue that this case is removable under the doctrine of complete preemption as, although Barton has pleaded only state law claims in his Complaint, the state law causes of action are preempted by the Employee Retirement Income Security Act ("ERISA").

The United States Court of Appeals for the Fifth Circuit recognizes two types of preemption under ERISA: complete preemption and conflict preemption. *See Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 336–37 (5th Cir.1999); *McClelland v. Gronwaldt,* 155 F.3d 507, 512 (5th Cir.1998). Complete preemption results because "Congress may so completely preempt a particular area that any civil complaint [arising under § 502(a), 29 U.S.C. 1132(a)] is necessarily federal in character." *Giles,* 172 F.3d at 336 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). As such, complete preemption "functions as an exception to the well-pleaded complaint rule" because "[§ ] 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Id.* Therefore, a state law cause of action seeking the same relief as provided by 29 U.S.C. § 1132(a) is treated as a federal claim, thereby raising a federal question on which a district court may exercise jurisdiction upon removal. *Id.* at 337.

Conflict preemption, also referred to as ordinary preemption, is implicated when the state law claims set forth in the plaintiff's complaint are preempted under 29 U.S.C. § 1144(a) but do not fall within the ambit of the civil enforcement provision, 29 U.S.C. § 1132(a). As explained by the Fifth Circuit: "state law claims that fall outside the scope of the civil enforcement provision of ERISA, § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule ..." *Id.* (alteration in original). Therefore:

> When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the

preemption issue can be addressed and resolved.

*Id.* (quoting *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 355 (3d Cir.1995) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983))).

▉ To determine whether the plaintiff's state law claim is completely preempted under ERISA, the Fifth Circuit has developed a two-pronged test. *See McClelland,* 155 F.3d at 517. First, the Court must "determine whether the claim is subject to ordinary preemption under 514(a)." *Id.* (citing *Hartle v. Packard Elec.,* 877 F.2d 354, 355 (5th Cir.1989)) (holding that ordinary preemption is a "prerequisite to [the] exercise of jurisdiction" pursuant to complete preemption). The second step is to determine whether the state law claim seeks the same relief as provided by the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a). *Id.* at n. 3 (quoting *Kramer v. Barney,* 80 F.3d 1080, 1083 (5th Cir.1996) ("Having concluded that [plaintiff's] state law claims are preempted, we must next consider whether ERISA displaces those claims under the complete preemption doctrine.")).

With regard to the first prong, the preemption provision of ERISA, 29 U.S.C. § 1144(a), indicates that "the provisions of this subchapter . . . shall supercede any and all State laws insofar as they . . . relate to any employee benefit plan." The "deliberately expansive" language of the preemption provision was "designed to 'establish pension plan regulation as exclusively a federal concern.' " *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). The preemptive scope of ERISA, however, is not without limits. The United States Supreme Court has found that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,*

463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Therefore, to fall within the ambit of ERISA preemption, the state law causes of action set forth by the plaintiff in his complaint, must "relate to" the employee benefit plan. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 112. L.Ed.2d 474 (1990).

▉ The Fifth Circuit has recognized two "unifying characteristics" of state law claims that are preempted by ERISA. The first characteristic is that "the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan." *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 245 (5th Cir.1990). *See also, Hook v. Morrison Milling Co.,* 38 F.3d 776, 781 (5th Cir. 1994). The second "unifying characteristic" is that "the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Memorial Hosp.,* 904 F.2d at 245. *See also, Hook,* 38 F.3d at 781. The Court finds that the state law claims set forth by Barton in his Complaint do not affect the "relationship among the traditional ERISA entities" and, therefore, are not preempted by ERISA.

In his Complaint, Barton alleges that his acceptance of the offer by Southern Farm "of early retirement *after he was demoted from corporate officer* created an enforceable contract" and that the refusal of Southern Farm "to award [him] the early retirement package offered to and accepted by [him] constituted a breach of said contract on the part of [Southern Farm]." Complaint, ¶ 33 (emphasis added). Barton also alleges that Ferguson and Robert Waters "tortiously interfered with [his] contract with [Southern Farm] to accept an early retirement package." *Id.,* at ¶ 34. There is no allegation in the Complaint that any of the Defendants improperly administered the ERISA-qualified Retirement Program.

Barton argues, and the Court agrees, that the real gravamen of the state law claims that reference the Retirement Program is the status he attained after he was demoted. In order to prevail on these claims, Barton must prove that he became an eligible for the ERISA-qualified Retirement Program offered by Southern Farm after he was demoted from his position as officer. The Court finds that whether Barton was to be considered a non-officer, and thus an "employee" eligible for enrollment into the ERISA-qualified Retirement Program, upon his demotion is not dependent on the administration of that plan. Instead, the Court finds that the determination of Barton's post-demotion status relates solely to the employment practices and internal policies of Southern Farm as his employer. In this regard, the Fifth Circuit has held "that ERISA does not preempt state law claims when the claims 'affect only and employee's employer/employee relationship with an employer and not his administrator/beneficiary relationship with the company.'" *Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir.1996) (citing *Hook*, 38 F.3d at 783) (alteration is original). The Court finds that as the state law claims set forth in the Complaint are predicated on the employee/employer relationship Barton had with Southern Farm, and do not directly affect the relationship between Barton as a beneficiary to the Retirement Program and the Defendant as an administrator of that plan, they are not preempted by 29 U.S.C. § 1144(a).

The Defendants additionally argue that because Barton, in his Complaint, seeks damages in the form of lost benefits under the Retirement Program, that his claims are preempted by ERISA. The Court disagrees. Under Fifth Circuit precedent:

[I]f the state law claim arises from or finds its basis in the loss of benefits from an ERISA plan, then it "relates to" such plan and is preempted. *Burks v. Amerada Hess Corp.*, 8 F.3d 301, 305 (5th Cir.1993), *abrogated on other grounds by Giles*, 172 F.3d 332 (5th

Cir.1999). However, if the loss of benefits is merely an element of damages resulting from the conduct forming the basis for the state law claim, the cause of action does not "relate to" the employee benefit plan for purposes of ERISA preemption. *Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 822–23 (5th Cir.1994); *see also Burks*, 8 F.3d at 305–06.

*Rabun v. Dairy Partners SW, LLC*, 14 F.Supp.2d 974, 976 (E.D.Tex.1998). As previously discussed, the Court finds that the loss of benefits claimed by Barton is not "related to" the administration of the ERISA-qualified Retirement Program. Instead, the Court finds that the loss of benefits Barton seeks on the face of his Complaint is an element of damages arising from the conduct of his employer, that is, the alleged wrongful refusal of his employer to consider him as a non-officer of the company after he was demoted. As the loss of benefits Barton seeks is "merely an element of damages" of his state law claims, it does not form a basis for ERISA preemption.

The Court finds that the state law claims that reference the Retirement Program are not preempted under 29 U.S.C. § 1144(a) in that they do not implicate the administration of an ERISA-qualified benefit plan. The Court additionally finds that Barton merely pleaded the loss of benefits as an element of his state law claims. Therefore, the Court finds that the doctrine of complete preemption, under which this Court could maintain jurisdiction over this case upon its removal from state court, has not been implicated, and that the case should be remanded to the state court in which it was originally filed.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of the Plaintiff to Remand [28–1] is hereby granted. This case will be remanded to the Circuit Court of the First Judicial District of Hinds County, Missis-

sippi, with the parties bearing their own costs.